UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:20-cv-82015-DIMITROULEAS

HARRINGTON LAW ASSOCIATES, PLLC,

    Plaintiff,

vs.

LANDMARK AMERICAN INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant Landmark American Insurance Company ("Landmark")'s Motion to Dismiss [DE 24], filed herein on March 10, 2021. The Court has carefully considered the Motion, Plaintiff Harrington Law Associates, PLLC ("Harrington Law")'s Response and Memorandum in Opposition [DE 25], and Defendant's Reply [DE 26] and is otherwise fully advised in the premises.

### I.    BACKGROUND

**A. Plaintiff's Underlying Action**

On March 16, 2019, Luis San Miguel and Lietty Pubillones (the "Pubillones Related Parties"), filed an action in Palm Beach County against Harrington Law Associates and Jeffrey Allen Harrington. *See* [DE 21-2]. According to the Second Amended Complaint in that action, the Pubillones Related Parties, who are residents of Spain, retained Florida lawyer Jeffrey Allen Harrington ("Mr. Harrington") and Harrington Law as their attorney for the purchase of a property in Palm Beach, Florida. *Id.* at ¶¶ 2-5, 9-10. On or about January 16, 2019, the

Pubillones Related Parties were instructed by Mr. Harrington to wire $511,500.00 to Harrington Law's trust account at BB&T for the purchase of the property. ¶¶ 12-13. Thereafter, the Pubillones Related Parties received a fraudulent email purporting to be Harrington Law, instructing the wire be sent to an account at Wells Fargo Bank. ¶¶ 14, 22. The Pubillones Related Parties followed the fraudulent instructions and wired the funds to the Wells Fargo account. ¶ 17.

On January 17, 2019, the Pubillones Related Parties emailed Harrington Law attaching a copy of the wire order that had been placed to the Wells Fargo account. ¶ 16. On January 18, 2019, the Pubillones Related Parties sent a second attachment to Harrington Law showing the funds had been sent to the Wells Fargo account. ¶ 18. Harrington Law did not review the PDF attachments and investigate once the funds failed to arrive. ¶¶ 20-21. Harrington Law informed the Pubillones Related Parties that the law firm's email accounts had been previously hacked, but they believed the problem had been remedied. ¶ 21. An investigation confirmed the alternate instructions had been sent by a fraudster and the funds had never credited Harrington Law's trust account at BB&T. ¶ 22. By the time the Harrington Law discovered the fraudulent activity, the Pubillones Related Parties were unable to recover any of the money they had wired. ¶ 23.

On February 28, 2020, the Pubillones Related Parties filed a Second Amended Complaint against Harrington Law for (1) negligence, (2) legal malpractice, (3) breach of fudiciary duty, and (4) negligent hiring. *See* [DE 21-2]. The Pubillones Related Parties allege in Count I that Harrington Law was negligent in failing to use reasonable security methods to protect the previously compromised email account when sending wiring instructions. *Id.* at ¶¶ 28-41. Count II alleges that Harrington Law breached their professional duty to timely review the wiring confirmation provided by the Pubillones Related Parties. ¶¶ 42-54. The Pubillones Related parties allege in Count III that Harrington Law breached their fiduciary duty by failing to

safeguard their internet and emails. ¶¶ 55-62. The Second Amended Complaint alleges in Count IV that Harrington Law negligently hired Reinhart Consulting LLC ("Reinhart") as its IT company without a reasonable investigation as to Reinhart's suitability or fitness to perform the IT duties for which it was hired because Reinhart is run by the cousin of Harrington Law's owner. ¶¶ 26, 63-68. Each of the four counts in the Second Amended Complaint incorporates the allegation that, "[a]s a result of Mr. Harrington's actions and vicariously Harrington Law's actions, the Plaintiffs wired a fraudster the amount of $511,500.00." *See* [DE 21-2] at ¶¶ 25, 28, 42, 55, 63.

### B. The Instant Action

In the February 17, 2021 Amended Complaint, the operative complaint, of the instant action for declaratory relief and breach of contract by Plaintiff Harrington Law against its professional liability insurer Defendant Landmark, Harrington Law alleges it secured a professional liability policy with Landmark on or about December 18, 2017. *See* [DE 21] at ¶ 8. Plaintiff attached, as an exhibit to its Amended Complaint, a copy of Landmark's policy for "Lawyers Professional Liability Coverage." *See* [DE 21-1]. The policy provides coverage in part for damages and claim expenses "arising out of a negligent act, error, omission, or Personal Injury . . . in the rendering of or failure to render Professional Services as a Lawyer . . ." *See* [DE 21-1] at ¶ I.A (emphasis omitted). The policy also lists exceptions to coverage in Part II "Exclusions." [DE 21-1] at pp. 4-6. Paragraph H of Part II is referred to as the "theft exclusion," and states, "This policy does not apply to any Claim or Claim Expenses based upon or arising out of . . . [t]he actual or alleged theft, stealing, conversion, commingling, embezzlement, or misappropriate by any person of any kind of monies, funds, negotiable instruments, securities, property of any kind or assets of any kind." [DE 21-1] at ¶ II.H.

Plaintiff timely gave Landmark notice of the underlying claim and provided Landmark with a copy of the summons and complaint. [DE 21] at ¶ 16. On or about April 1, 2019, Landmark denied coverage to Plaintiff pursuant to the "theft exclusion" of Part II subsection H of the policy. ¶ 17.

Based on the foregoing, the Amended Complaint alleges two causes of action: Count I for Declaratory Action and Count II for Breach of Contract. *See* [DE 21]. In Count I, Plaintiff requests this Court declare that "(i) the Underlying Action concerns negligence in the rendition of professional services; (ii) the Underlying Action triggers coverage under the Policy; (iii) said coverage is not obviated by the Exclusion Clause in the Policy; and (iv) Defendant is contractually responsible for providing coverage with regard to the Underlying Action." *See id.* at ¶¶19-28 and wherefore clause. Similarly, Plaintiff alleges in Count II that Defendant breached the contract for insurance coverage by denying Harrington Law's claim in the underlying matter with the Pubillones Related Parties. *Id.* at ¶¶ 29-33.

On March 10, 2021, Defendant filed the instant Motion to Dismiss, seeking dismissal with prejudice of the Amended Complaint. *See* [DE 24]. The Motion is ripe for review. *See* [DE's 25, 26].

**II.     STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 44, 555 (2007)). A pleading that asserts mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555. And "on the assumption that all the allegations are true (even if doubtful in fact)," the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "The Supreme Court has employed a 'two-pronged approach' in applying the foregoing principles: first, a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Boyd v. Warden, Holman Correctional Facility*, 856 F. 3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

"It is well settled that an insurer' duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). "The duty to defend must be determined from the allegations in the complaint." *Id.* at 443. "Although the

alleged facts may fall within the coverage of the policy, if the face of the complaint shows the applicability of an exclusion, the insurer has no duty to defend." *O'Rear v. Greenwich Ins. Co.*, No. 8:09-CV-1903-T-26TGW, 2010 WL 4867527, at *2–3 (M.D. Fla. Nov. 23, 2010), *aff'd*, 432 F. App'x 877 (11th Cir. 2011). "Where the application of one or more policy exclusions applies to the face of the complaint, no duty to defend exists, even if the complaint alleges facts that would otherwise give rise to a covered claim." *Id.* (quoting *Chicago Title Ins. Co. v. Northland Ins. Co.*, 31 So.3d 214, 216 (Fla. 4th DCA 2010).

When interpreting insurances contracts, under Florida law, the contract is construed according to its "plain meaning." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1304 (11th Cir. 2008). The insurance contract is ambiguous if its language lends itself to more than one interpretation. *Id.* "Ambiguous policy provisions ... should be construed liberally in favor of coverage of the insured and strictly against the insurer." *Dickson v. Econ. Premier Assur. Co.*, 36 So. 3d 789, 790 (Fla. 5th DCA 2010). Furthermore, ambiguous "exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). However, "strict construction does not mean…that clear words may be tortured into uncertainty so that new meanings can be added. *State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc.*, 678 So. 2d 397, 401 (Fla. 4th DCA 1996), on reh'g (Aug. 20, 1996), approved, 711 So. 2d 1135 (Fla. 1998). "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979).

Defendant contends that the Plaintiff is not entitled to coverage under Landmark's policy for two independent reasons. First, Defendant argues that the underlying lawsuit is not covered

because the action does not arise out of a qualifying negligent act, error, or omission committed by the insured in the rendering of professional legal services. Second, Defendant asserts that the theft exclusion of the policy unambiguously precludes coverage for the underlying lawsuit.

In contrast, Plaintiff argues that it is entitled to coverage under the Landmark policy because "(i) the Theft Exclusion is ambiguous and (ii) all of the allegations contained in the second complaint of the Underlying Action do not fall within the Theft Exclusion." First, Plaintiff argues the theft exclusion is ambiguous because the policy language does not define the term "any person," which could therefore be interpreted as "anybody, whether related to the insured or not" or more narrowly to mean "the insured and those acting under the insured's umbrella." Such an unclear exclusion clause would be construed in favor of the insured and against the insurer. *See Auto-Owners Ins. Co.*, 756 So. 2d at 34. Second, Plaintiff argues that the claims against it contained in the Second Amended Complaint of the underlying action arose out of Plaintiff's negligent act, error or omission in the rendering of professional services as a lawyer, which caused the Pubillones Related Parties' loss and therefore do not fall under the theft exclusion.

The Court must begin its analysis with the plain language of the insurance policy. *See Mills*, 511 F.3d at 1304. The theft exclusion's plain language states that no coverage is provided for claims "arising out of" any theft, stealing, conversion, commingling, embezzlement, or misappropriation by "*any person* . . ." [DE 21-1] at ¶ II.H. Although ambiguous terms are to be construed in favor of the insured, these terms are not ambiguous. Plaintiff has tortured the term "any person" from the theft exclusion in a failed attempt to make an argument for multiple interpretations of this phrase beyond its plain meaning of "anyone." If the insurance claim arose

from such a theft, then the plain and ordinary meaning of the language in the exclusion supports denial of coverage regardless of who committed the theft.

The Court must next determine whether the allegations contained in the second complaint of the underlying action fall within the plain meaning of the theft exclusion. Although the allegations by the Pubillones Related Parties against Harrington Law are not directly charges of theft, the allegations stem from and are dependent on the theft of funds by the fraudster. Therefore, the Court finds that Harrington Law's claim clearly "arises out of" circumstances for which the theft exclusion precludes coverage.  For the foregoing reasons Plaintiff cannot state a claim for declaratory judgment or breach of contract in this matter.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [DE 24] is hereby **GRANTED**;
2. The Amended Complaint [DE 21] is hereby **DISMISSED WITH PREJUDICE**;
3. The Clerk is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 26th day of July, 2021.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record